UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X

| | |
|---|---|
| **ADAM BAUER**, | **COMPLAINT** |
| Plaintiff, | **JURY TRIAL DEMANDED** |
| -against- | 9:22 Civ. No. 1007 (GLS/ML) |
| **ANTONIO IODICE**, Correction Officer at Marcy Correctional Facility, **NICHOLAS ANZALONE**, Correction Officer at Marcy Correctional Facility, **ALFRED ZEINA**, Sergeant at Marcy Correctional Facility, & **THOMAS MCNANEY**, Sergeant at Marcy Correctional Facility, | |
| Defendants. | |

----------------------------------------------------------------X

1. Plaintiff Adam Bauer, for his complaint, alleges, upon personal knowledge as to himself and information and belief as to other matters, as follows:

**PRELIMINARY STATEMENT**

2. On February 12, 2020, Plaintiff was incarcerated at the Marcy Correctional Facility ("Marcy"), in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"). Plaintiff was serving a short sentence for a non-violent drug-related offense and was less than a year from his release. On that day, Plaintiff encountered Defendant Correction Officer ("CO") Antonio Iodice in the bathroom, where Plaintiff had gone to smoke a cigarette. Mr. Bauer immediately complied with CO Iodice's instructions that he submit to a search for contraband. Without any justification or warning, CO Iodice viciously assaulted Plaintiff in the bathroom, punching him in the head, throwing him to the ground, and kicking him repeatedly in the side. CO Iodice's actions were unprovoked and vicious.

3. Defendants CO Nicolas Anzalone, Sergeant Alfred Zeina, and Sergeant Thomas McNaney entered the bathroom during the assault and joined CO Iodice in kicking Plaintiff while he lay on the ground and/or failed to stop CO Iodice's assault. One of the sergeants present hit Plaintiff over the head with a clipboard so hard that the metal clasp on the clipboard left a V-shaped gash in Plaintiff's forehead. Two other incarcerated people witnessed the unprovoked, brutal assault in the bathroom.

4. After beating him, Defendants took Plaintiff to the Marcy infirmary in a van wherein they forced Plaintiff to lie face down on the floor while CO Anzalone kicked his feet. At the infirmary, a nurse documented two bloody gashes on Plaintiff's forehead and CO Anzalone took photos of Plaintiff bleeding onto the infirmary floor. Defendants told the nurse that Plaintiff's injuries were self-inflicted. Defendants made Plaintiff change out of his bloody clothes before transporting him to St. Luke's Hospital Emergency Room ("St. Luke's"). The COs who transported Plaintiff to St. Luke's reported to medical staff there, contradictorily, that another incarcerated person had inflicted Plaintiff's injuries on him. Still another DOCCS employee told a St. Luke's nurse over the phone that Plaintiff's injuries "occurred by a seatbelt."

5. Plaintiff was "crying profusely" upon his arrival at St. Luke's. St. Luke's medical staff documented Plaintiff's injuries, including bruising on his abdomen and two gashes in his forehead. The gashes required over twenty stitches to close. While Plaintiff was being treated for his injuries, Defendants were fabricating disciplinary charges against Plaintiff to cover up their assault. Upon Plaintiff's return to Marcy from St. Luke's, a CO grabbed him in the infirmary bathroom and threatened him if he told anyone about the assault. Plaintiff was then thrown into solitary confinement pending a Superintendent's hearing on the disciplinary charges Defendants had leveled against him.

6. Plaintiff had a Superintendent's disciplinary hearing eight days after he was assaulted. The hearing officer found Plaintiff guilty and imposed multiple penalties against him, including 82 days in Keeplock and 60 days of loss of privileges. Plaintiff also lost his opportunity to be considered for early work release as a result of the false disciplinary charges and guilty findings. The Acting Director of the Special Housing/Inmate Disciplinary Program reversed the disciplinary decision 60 days after the Superintendent's hearing took place.

7. Plaintiff has suffered substantial physical and mental injuries as a result of Defendants' assault and false disciplinary charges against him. Plaintiff therefore files this civil rights action against CO Iodice, who assaulted him, and CO Anzalone, Sergeant Zeina, and Sergeant McNaney, who also assaulted him and/or failed to intervene. Plaintiff seeks damages pursuant to 42 U.S.C. § 1983 for violations of his rights under the Eighth Amendment to the United States Constitution.

## JURISDICTION AND VENUE

8. This Court has jurisdiction pursuant to 28 U.S.C. § 1331. This action arises under the Eighth Amendment to the Constitution of the United States and 42 U.S.C. § 1983. Venue is proper in this district under 28 U.S.C. § 1391(b).

9. At all relevant times, Mr. Bauer was confined at Marcy in the care and custody of DOCCS.

## THE PARTIES

10. Plaintiff **ADAM BAUER** is a citizen of the United States. At the time these events occurred, he was in DOCCS custody confined at Marcy, in Oneida County, New York. He now resides in Lewis County, New York.

11. Defendant **ANTONIO IODICE** was at all relevant times a Correction Officer at Marcy, and as such he was responsible for the safety and security of the incarcerated persons confined therein, including Mr. Bauer.

12. Defendant **NICHOLAS ANZALONE** was at all relevant times a Correction Officer at Marcy, and as such he was responsible for the safety and security of the incarcerated persons confined therein, including Mr. Bauer.

13. Defendant **ALFRED ZEINA** was at all relevant times a Correction Sergeant at Marcy, and as such he was responsible for the safety and security of the incarcerated persons confined therein, including Mr. Bauer.

14. Defendant **THOMAS MCNANEY** was at all relevant times a Correction Sergeant at Marcy, and as such he was responsible for the safety and security of the incarcerated persons confined therein, including Mr. Bauer.

15. At all relevant times, Defendants were state actors and acted under color of the laws, statutes and ordinances, regulations, policies, customs, and usages of the State of New York.

## FACTUAL ALLEGATIONS

16. Plaintiff Adam Bauer was 46 years old in February of 2020 and was incarcerated at Marcy.

17. Mr. Bauer's projected release date from prison was January of 2021.

18. Prior to February 12, 2020, Mr. Bauer had received either work release approval or presumptive work release approval for the Comprehensive Alcohol and Substance Abuse Treatment ("CASAT") Program under N.Y. Comp. Codes R. & Regs. tit. 7, § 1951.1.

19. Upon information and belief, prior to February 12, 2020, Mr. Bauer was on track to become eligible for work release through the CASAT program in the summer of 2020.

I. **CO Iodice Assaults Mr. Bauer in the Prison Bathroom; Sergeant Zeina, CO Anzalone, and Sergeant McNaney Join in the Assault**

20. On February 12, 2020, around 7:00 p.m., Mr. Bauer was in a bathroom stall in the Dorm F-1 bathroom at Marcy.

21. Two other incarcerated persons were in the bathroom as well.

22. CO Iodice entered the bathroom and instructed the other two incarcerated persons to stand against the wall.

23. Mr. Bauer exited the stall, and CO Iodice asked what he was doing.

24. Mr. Bauer said that he had been preparing to light a cigarette.

25. Mr. Bauer then voluntarily handed CO Iodice a battery he had intended to use to light the cigarette.

26. CO Iodice ordered Mr. Bauer to get on the floor.

27. Mr. Bauer complied and got on the floor.

28. CO Iodice then ordered Mr. Bauer to get against the wall for a pat frisk.

29. Mr. Bauer complied and stood facing the wall.

30. CO Iodice patted Mr. Bauer a few times.

31. Suddenly, unprovoked and without warning, CO Iodice then began viciously punching Mr. Bauer in the head from behind, while Mr. Bauer faced the wall.

32. CO Iodice punched the right side of Mr. Bauer's head repeatedly with his closed right fist.

33. Mr. Bauer fell down to the floor.

34. CO Iodice began kicking Mr. Bauer repeatedly in his side as Mr. Bauer lay on the floor.

35. Three additional correction officers entered the bathroom: Sergeant Zeina, Sergeant McNaney, and CO Anzalone.

36. These three officers joined CO Iodice in kicking Mr. Bauer and/or stood by and did nothing to intervene as CO Iodice kicked Mr. Bauer.

37. Mr. Bauer tried to protect himself from being kicked by curling into a ball on the floor.

38. After the incident, a witness reported to Mr. Bauer that one of the sergeants smashed a clipboard over Mr. Bauer's head.

39. The metal clasp on the clipboard cut a deep, V-shaped laceration into Mr. Bauer's head.

40. None of the Defendants intervened or tried to stop their fellow officers' malicious and senseless assaults on Mr. Bauer.

41. Mr. Bauer was bleeding from his head and in great pain.

42. Mr. Bauer defecated on himself due to extreme pain.

43. Defendants laughed at Mr. Bauer for defecating in his pants.

44. The two other incarcerated persons in the bathroom witnessed the assault.

45. Two of the Defendants took Mr. Bauer by the arms and dragged him out of the bathroom.

II. **Defendants Took Mr. Bauer to the Infirmary Where They Attempted To Intimidate Him Out of Reporting the Assault**

46. Defendants dragged Mr. Bauer to a van.

47. Defendants threw Mr. Bauer into the back of the van.

48. Defendants forced Mr. Bauer to lie on his stomach on the floor of the van, facing the back doors.

49. CO Anzalone sat in the back of the van with Mr. Bauer.

50. Mr. Bauer bled onto the floor of the van from two deep lacerations on his forehead.

51. CO Anzalone kicked Mr. Bauer in his feet while he was lying on the floor of the van.

52. When the van arrived at the infirmary around 7:45 p.m., the Defendants dragged Mr. Bauer inside.

53. Mr. Bauer bled onto the floor of the infirmary from the cuts in his head.

54. Photographs at Figure 1 depict Mr. Bauer in the infirmary after the incident as follows:



*Figure 1*

55. In the infirmary, RN Olasumbo Dada saw Mr. Bauer.

56. She documented the two deep lacerations on his forehead, and abrasions on his right front shoulder, the back of his right lower arm, and on his right side.

57. CO Anzalone took photographs of Mr. Bauer's injuries in the infirmary. One of those photographs depicts Mr. Bauer's injuries as follows:



*Figure 2*

58. Mr. Bauer told Defendants that he needed to go to the emergency room for his injuries.

59. Defendants forced Mr. Bauer to change out of his bloody clothes into clean ones before going to the hospital.

60. CO Iodice was treated in the infirmary for injury to his right knuckles and wrist which he had sustained when he assaulted Mr. Bauer.

8


### III. Mr. Bauer Is Treated at St. Luke's Hospital for Injuries from the Assault

61. Between approximately 8:00 and 10:00 p.m., Mr. Bauer was transported by van to St. Luke's.

62. Mr. Bauer was seen immediately at St. Luke's for the severe nature of the lacerations on his head.

63. St. Luke's medical staff documented two lacerations in Mr. Bauer's forehead, a straight-line laceration in his mid-forehead and a V-shaped laceration on the left side of his forehead.

64. Medical staff also documented that Mr. Bauer was bleeding from his head; that he reported pain on the left side of his head and the right side of his body, making it painful to breathe; that he had abrasions on his right forearm, right upper arm, and left flank; and that he had muscle pain.

65. St. Luke's staff also documented bruises developing around Mr. Bauer's abdomen.

66. They noted that Mr. Bauer was "crying profusely."

67. Contemporaneous medical records from St. Luke's indicate that Mr. Bauer reported to a nurse in the emergency room that COs had "beat the crap out of" him.

68. St. Luke's medical staff applied over twenty sutures, including both internal and external sutures, to the wounds on Mr. Bauer's forehead.

69. Around 12:50 a.m. on February 13, 2020, Mr. Bauer was transported back to Marcy.

70. Upon Mr. Bauer's return to Marcy, he was taken first back to the infirmary.

71. Mr. Bauer went to the bathroom while he was in the infirmary.

72. He was handcuffed while he went to the bathroom.

73. An unknown CO went into the bathroom with Mr. Bauer.

74. An unknown sergeant waited outside the bathroom.

75. The CO grabbed Mr. Bauer while they were in the bathroom.

76. Mr. Bauer was crying.

77. The CO called Mr. Bauer a "piece of shit" and told him that he had better not tell anyone about the assault.

78. When Mr. Bauer exited the bathroom, he told the sergeant waiting outside that the CO had just threatened Mr. Bauer not to disclose the assault.

79. The sergeant ignored Mr. Bauer.

80. Defendants then placed Mr. Bauer in a special housing unit ("SHU")—solitary confinement—pending a disciplinary proceeding.

### IV. **Defendants Fabricate Charges Against Mr. Bauer for which Mr. Bauer is Found Guilty and Punished**

81. While Mr. Bauer was being treated for the injuries he sustained during the assault, Defendants were fabricating charges against him to cover up their own misconduct.

82. When Defendants brought Mr. Bauer to the infirmary on February 12, 2020, after they assaulted him, upon information and belief, they first told the nurse on duty that Mr. Bauer's injuries were self-inflicted and caused by Mr. Bauer's own actions of slamming his head against a seatbelt fastener on the floor of the van on the way to the infirmary.

83. Medical records from DOCCS indicate that the nurse who documented Mr. Bauer's injuries in the infirmary spoke to a St. Luke's ER nurse that evening.

84. St. Luke's medical records indicate that, when several unknown COs brought Mr. Bauer to St. Luke's, the COs reported to ER staff that "another inmate inflicted the injuries sustained to" Mr. Bauer.

85. The same St. Luke's medical records indicate, however, that a DOCCS nurse told an ER nurse that the injuries "occurred by a seatbelt."

86. The same evening of February 12, 2020, CO Iodice filled out an Inmate Misbehavior Report alleging that when he ordered Mr. Bauer against the wall for a pat frisk, Mr. Bauer attempted to hit CO Iodice's head with his elbow.

87. CO Iodice alleged further in the Inmate Misbehavior Report that he placed Mr. Bauer in a body hold and forced him to the ground, where Mr. Bauer resisted him.

88. CO Iodice alleged further in the Use of Force Report that he put both his arms around Mr. Bauer in a "bear hug type hold" and forced him to the ground, where Mr. Bauer continued to struggle despite CO Iodice's orders to stop resisting.

89. CO Iodice then alleged in the Use of Force Report that he called for assistance, and that when the response team arrived, Mr. Bauer suddenly stopped resisting and became compliant.

90. Also on the evening of February 12, 2020, CO Anzalone wrote a memo to Sergeant Zeina alleging that he had come to the bathroom in response to CO Iodice's call for assistance and that Mr. Bauer was compliant when CO Anzalone entered.

91. CO Anzalone alleged in the memo that he placed Mr. Bauer in mechanical restraints and escorted Mr. Bauer to the van for transport to the infirmary.

92. CO Anzalone alleged in the memo that he placed Mr. Bauer in a kneeling position in the van and that Mr. Bauer began lunging his body forward and hitting his own head against a seatbelt mechanism in the van.

93. The same night of February 12, 2020, or early morning on February 13, 2020, Sergeant Zeina wrote a memo to the superintendent repeating CO Iodice's and CO Anzalone's false accounts of what had occurred in the bathroom.

94. Mr. Bauer spent eight days in the SHU before his Superintendent's hearing.

95. On February 20, 2020, Mr. Bauer's Superintendent's hearing was held.

96. Mr. Bauer was found guilty of violating DOCCS Rule of Conduct 104.11, Violent Conduct; Rule of Conduct 106.10, Refusing a Direct Order; and Rule of Conduct 115.10, Refusing a Search or Frisk.

97. The hearing officer wrote in his "statement of evidence relied upon" that he found Mr. Bauer guilty of these violations based on the Use of Force Report filled out by CO Iodice on February 12, 2020, and a typed Use of Force Report repeating verbatim CO Iodice's written Use of Force Report.

98. The hearing officer did not consider any other evidence aside from CO Iodice's account in these two Use of Force Reports in rendering his decision.

99. The hearing officer levied the following penalties against Mr. Bauer:

   a. 8 days in SHU that Mr. Bauer had already served prehearing;

   b. 82 additional days in "Keeplock," another form of solitary confinement, with 22 days suspended;

   c. 60 days loss of package privileges;

      d. 60 days loss of commissary privileges; and

      e. 60 days loss of phone privileges.

100. On March 4, 2020, Mr. Bauer was transferred to Collins Correctional Facility ("Collins"). Upon his arrival, he was placed into Keeplock at Collins to continue serving the penalty imposed at his Superintendent's hearing.

## V. After Mr. Bauer Files a Notice of Intent with the New York Attorney General, the Superintendent's Hearing Decision is Reversed; Yet Superintendent Reardon Fails to Remedy the Ongoing Injury to Mr. Bauer

101. On March 12, 2020, Mr. Bauer filed a Notice of Intent with the New York Attorney General stating that he intended to file a claim against the State of New York based on the assault he endured on February 12, 2020.

102. On April 8, 2020, Prisoners' Legal Services ("PLS") filed an appeal of the Superintendent's hearing disposition on Mr. Bauer's behalf.

103. By on or about April 20, 2020, Mr. Bauer had been released from Keeplock.

104. On April 23, 2020, the Acting Director of the Special Housing/ Inmate Disciplinary Program for DOCCS informed Mr. Bauer by letter that his February 20, 2020 Superintendent's hearing disposition had been reviewed and reversed as a result of the appeal filed by PLS.

## VI. Mr. Bauer Has Been Injured by Defendants' Misconduct

105. Mr. Bauer has suffered substantial physical injuries due to the violent assaults by Defendants and their failure to intervene in each other's assaults on Mr. Bauer.

106. Mr. Bauer required over twenty sutures in his forehead to close the wound.

107. He suffered bruises, abrasions, pain, and blood loss following the assault.

108. He continues to suffer persistent body pain, headaches, and dizziness as a result of the assault.

109. Mr. Bauer was also injured as a result of the falsified charges and sham hearing against him.

110. He spent 60 days in solitary confinement.

111. He lost phone, commissary, and packages privileges for 60 days.

112. Upon information and belief, Mr. Bauer was ejected from the CASAT program through which he had been approved or presumptively approved for work release because of the Superintendent's hearing finding, based on falsified charges, that he had violated DOCCS rules.

113. Upon information and belief, he was never returned to the CASAT program, even after his Superintendent's hearing discipline was overruled.

114. Upon information and belief, Mr. Bauer had no other disciplinary infractions in his corrections record.

115. Upon information and belief, Mr. Bauer was likely to have been advanced to the work release program as early as July 2020, had he not been assaulted by staff and falsely charged with misconduct.

116. Instead, Mr. Bauer remained in prison until January of 2021, when he was released.

117. He therefore lost as much as six months with his family between July 2020 and January 2021 that he would likely have had if he had remained in the CASAT program.

118. Mr. Bauer has also suffered substantial psychological injury due to this unjustified and unprovoked assault, Defendants' subsequent falsification of charges against him, loss of privileges and eligibility for work release, and time in solitary confinement.

119. He suffers from trauma, stress, persistent fear, nightmares, depression, and anxiety as a result of the assault and Defendants' subsequent misconduct.

## **CAUSE OF ACTION**
42 U.S.C. § 1983 – Eighth Amendment
Excessive Force

120. Mr. Bauer repeats and realleges as if fully set forth herein the allegations contained in paragraphs numbered 1 through 119.

121. Defendants' assaults upon Mr. Bauer on February 12, 2020, were unauthorized, unprovoked, unlawful, and applied maliciously and sadistically to cause Mr. Bauer physical injury.

122. Defendants' assaults upon Mr. Bauer on February 12, 2020, occurred in the presence of each other. Each of these Defendants wantonly, recklessly, and with depraved indifference to human life failed to (i) aid Mr. Bauer, and/or (ii) stop each other from violently assaulting Mr. Bauer, and/or (iii) otherwise intervene on his behalf.

123. Defendants, in assaulting and failing to protect Mr. Bauer, inflicted a cruel and unusual punishment against Mr. Bauer in violation of his rights under the Eighth Amendment to the United States Constitution.

124. Because of Defendants' violation of Mr. Bauer's constitutional rights, Mr. Bauer suffered severe pain, emotional injury, and physical damage to his face, head, arm, and side body. Accordingly, Mr. Bauer is entitled to compensatory and punitive damages against Defendants jointly and severally.

**JURY TRIAL DEMANDED**

125. Mr. Bauer demands a trial by jury.

**WHEREFORE,** Plaintiff respectfully requests that this Court enter an Order granting him compensatory and punitive damages against each Defendant on this cause of action; granting Plaintiff reasonable attorneys' fees, costs and disbursements pursuant to the Civil Rights Attorney's Fee Awards Act of 1976, 42 U.S.C. § 1988; and granting Plaintiff such other and further relief as this Court deems just and equitable.

Dated: New York, New York
September 23, 2022

            EMERY CELLI BRINCKERHOFF
            ABADY WARD & MAAZEL LLP

            By: _____/S_____
                Katherine Rosenfeld
                Noel R. León
                600 Fifth Avenue, 10th Floor
                New York, New York 10020
                (212) 763-5000

                *Attorneys for Plaintiff*