UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

ADAM BAUER,

                Plaintiff,

     -against-

ANTONIO IODICE, Correction Officer at Marcy
Correctional Facility, NICHOLAS ANZALONE,
Correction Officer at Marcy Correctional Facility,
ALFRED ZEINA, Sergeant at Marcy Correctional
Facility, and THOMAS McNANEY, Sergeant at
Marcy Correctional Facility,

              Defendants.

Case No. 9:22 Civ. No. 1007 (GLS/ML)

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO THE OFFICE OF THE
NEW YORK STATE ATTORNEY GENERAL'S RENEWED MOTION TO WITHDRAW
AS COUNSEL**

Emery Celli Brinckerhoff Abady Ward & Maazel LLP
600 Fifth Avenue, 10th Floor
New York, New York 10020
(212) 763-5000

<u>TABLE OF CONTENTS</u>

<u>PAGE NO.</u>

TABLE OF AUTHORITIES ........................................................................................ii-iii

PRELIMINARY STATEMENT ......................................................................................1

RELEVANT FACTS & PROCEDURAL HISTORY .....................................................3

      A.    The Litigation Incident: The Assault on Mr. Bauer.....................................3

      B.    Discovery Closes, the Case is Trial Ready, and the Parties
           Engage in Settlement Discussions ...............................................................4

      C.    Defendant Anzalone is Allegedly Involved in the Death of
           Robert Brooks ...............................................................................................5

      D.    The AG's Office of Special Investigation Investigates, Recuses,
           and OAG Seeks to Withdraw.........................................................................5

      E.    Motions to Withdraw ....................................................................................5

ARGUMENT ..................................................................................................................6

    I.    NO CONFLICT EXISTS, AND THUS NO GOOD CAUSE TO
        WITHDRAW EXISTS, BECAUSE OSI AND OAG LITIGATION
        BUREAU ARE NOT A "FIRM"............................................................................7

      A.    The OAG Litigation Bureau and OSI Are Not a "Firm" Under
           the NYRPC .....................................................................................................7

      B.    The OAG's Request to Withdraw Is Inconsistent with Current
           Practices ......................................................................................................12

    II.    TRADITIONAL METHODS OF MOTIONS *IN LIMINE*, VOIR DIRE,
        AND/OR LIMITING INSTRUCTIONS ARE SUFFICIENT .............................13

    III.    PLAINTIFF WOULD BE SIGNIFICANTLY PREJUDICED BY
        OAG'S WITHDRAWAL .....................................................................................15

    IV.    IN THE ALTERNATIVE, THE OAG SHOULD BE PRECLUDED
        FROM WITHDRAWING AS COUNSEL FOR DEFENDANTS IODICE,
        MCNANEY, AND ZEINA.................................................................................16

CONCLUSION.............................................................................................................18

<u>TABLE OF AUTHORITIES</u>

<u>PAGE NO.</u>

**Cases**

*Brooks v. Farina, et al.*,
    No. 9:25-CV-68, ECF No. 1 (N.D.N.Y. Jan. 15, 2025)....................................................... 5

*Brown v. Nat'l Survival Games, Inc.*,
    No. 91-CV-221, 1994 WL 660533 (N.D.N.Y. Nov. 18, 1994) ........................................ 15

*Hempstead Video, Inc. v. Inc. Vill. of Valley Stream*,
    409 F.3d 127 (2d Cir. 2005)............................................................................................. 11

*Hexemer v. Gen. Elec. Co.*,
    No. 12-CV-1808, 2014 WL 5465813 (N.D.N.Y. Oct. 28, 2014) ...................................... 7

*John v. All Star Limousine Serv., Ltd.*,
    No. 17-CV-6327, 2019 WL 13205033 (E.D.N.Y. Dec. 9, 2019) ...................................... 7

*Karimian v. Time Equities, Inc.*,
    No. 10-CV-3773, 2011 WL 1900092 (S.D.N.Y. May 11, 2011................................. 17, 18

*Koon Chun King Kee Soy & Sauce Factory, Ltd. v. Kun Fung USA Trading Co., Inc.*,
    No. 07-CV-2568, 2009 WL 605786 (E.D.N.Y. Mar. 9, 2009 ........................................... 6

*Malarkey v. Texaco, Inc.*,
    No. 81-CV-5224, 1989 WL 88709 (S.D.N.Y. July 31, 1989) ................................... 15, 16

*McGuire v. Wilson*,
    735 F. Supp. 83 (S.D.N.Y. 1990).................................................................................. 17, 18

*Nebraska Press Ass'n v. Stuart*,
    427 U.S. 539 (1976)......................................................................................................... 15

*Palin v. New York Times Co.*,
    113 F.4th 245 (2d Cir. 2024) ........................................................................................... 15

*Revise Clothing, Inc. v. Joe's Jeans Subsidiary, Inc.*,
    687 F. Supp. 2d 381 (S.D.N.Y. 2010).............................................................................. 14

*Sidor v. Zuhoski*,
    261 A.D.2d 529 (2d Dep't 1999) ..................................................................................... 16

*Spigner v. New York State Department of Corrections and Community Supervision, et al.*,
    No. 24-CV-00520, ECF No. 1 (N.D.N.Y. Nov. 28, 2023) ......................................... 12, 13

*United States Football League v. National Football League*,
    605 F. Supp. 1448 (S.D.N.Y. 1985)..................................................................... 14

*Whiting v. Lacara*,
    187 F.3d 317 (2d Cir. 1999).......................................................................... 6, 7

**Other Authorities**

N.Y. Eth. Op. 1186 (2020)............................................................................ 10, 12, 13

NY Bill Jacket, 2020 S.B. 2574, Ch. 95 ...................................................................... 9

NY Bill Jacket, 2020 S.B. 8496, Ch. 96 ...................................................................... 9

Office of the New York State Attorney General Letitia James, Office of Special Investigation,
    Office of Special Investigation Fourth Annual Report at 44-45 (Oct. 1, 2024),
    https://ag.ny.gov/sites/default/files/reports/20241001-annual-report.pdf........................ 13

Press Release, Letitia James, New York Attorney General, VIDEO: Attorney General James
    Updates New Yorkers on Investigation into the Death of Robert Brooks at Marcy
    Correctional Facility (Jan. 2, 2025), https://ag.ny.gov/press-release/2025/video-attorney-
    general-james-updates-new-yorkers-investigation-death-robert ..................................... 11

State Counsel Division, New York State Attorney General (Jan. 1, 2024),
    https://ag.ny.gov/about/about-office/state-counsel-division............................................. 14

VIDEO: Attorney General James Updates New Yorkers on Investigation into the Death of
    Robert Brooks at Marcy Correctional Facility, https://ag.ny.gov/press-
    release/2025/video-attorney-general-james-updates-new-yorkers-investigation-death-
    robert. ............................................................................................................... 10

Zoe Sottile, *Video of inmate's fatal beating shows him handcuffed as correctional officers punch
    and kick him*, CNN (Dec. 28, 2024) https://www.cnn.com/2024/12/27/us/marcy-
    correctional-facility-death-robert-brooks/index.html ....................................................... 5

**Rules**

Local Rule 11.1(b) ...................................................................................................... 7

New York Rules of Professional Conduct Rule 1.0 ....................................................... 9

New York Rules of Professional Conduct Rule 1.7 .................................................. 6, 18

## PRELIMINARY STATEMENT

This case arises out of an assault by corrections officers of Plaintiff Adam Bauer while he was a prisoner at Marcy Correctional Facility ("Marcy") in the custody of the Department of Corrections and Community Supervision. Plaintiff alleges that on February 12, 2020, Defendant Corrections Officer Antonio Iodice began assaulting Mr. Bauer during a pat search in the bathroom at Marcy, unprovoked, after which Defendants Corrections Officer Nicolas Anzalone, Sergeant Alfred Zeina, and Sergeant Thomas McNaney entered the bathroom and either joined in on the beating or failed to intervene. Mr. Bauer filed this action on September 23, 2022, and the New York State Office of the Attorney General ("OAG") Litigation Bureau appeared for and has represented the four Defendants (Iodice, Anzalone, Zeina, and McNaney) for the past three and a half years of the litigation.

On December 10, 2024, Robert Brooks died after he was allegedly beaten by several corrections officers at Marcy, including by Officer Anzalone who is a Defendant in this action. This incident was captured on body-worn camera footage. After the body-worn camera footage was publicly released, the Governor and the New York Attorney General both addressed Mr. Brooks' death, and for approximately two weeks in December 2024, the New York State Office of Special Investigations ("OSI") investigated his death ("the OSI Investigation"). OSI withdrew from its investigation on January 2, 2025, for the stated reason that the OAG Litigation Bureau was representing several officers allegedly involved in Mr. Brooks' death in other pending civil litigation, including in this case.

The OAG now seeks to withdraw as counsel for Defendants in this case due to a purported conflict stemming from the OSI's two-week investigation into Mr. Brooks' death. They argue that the OSI Investigation and the public attention Mr. Brooks' case has received

prevents the OAG Litigation Bureau from representing Defendant Anzalone in this action and by extension, they argue, all defendants.

The Court should reject the OAG's request for leave to withdraw.

First, there is no good cause for withdrawal because no conflict exists preventing the OAG Litigation Bureau (current counsel to Defendants) from continuing their representation. OSI lawyers could not represent Defendant Anzalone. But any conflict OSI lawyers may have is not imputable to the OAG Litigation Bureau because the two entities do not constitute a "firm" under the New York Rules of Professional Conduct.

The OAG's other arguments are unavailing. The OAG fails to cite any authority for their argument that the traditional methods of mitigating juror biases in cases where a party has received public attention, such as motions *in limine*, voir dire, and/or limiting instructions, are insufficient to cure any hypothetical prejudice to Defendants. For good reason too, as these methods have long been used by trial judges to mitigate juror bias stemming from media attention. By contrast, the prejudice to Mr. Bauer stemming from an eleventh-hour substitution of counsel after three and a half years of litigation is significant—this case is trial ready, and settlement negotiations have been ongoing for months (as counsel for both parties have previously represented to the Court), all of which would be in vain if the case is reset to zero with new defense counsel.

Should the Court deem OAG's withdrawal from representing Defendant Anzalone necessary, the OAG should not be permitted to withdraw from representing the other three Defendants. The OAG fails to make the requisite showing that the attorney-client relationship has deteriorated with any Defendant, let alone all of them, and the purported ethical concerns of continued to represent all Defendants but Anzalone are even more vague and speculative.

In its broad discretion to decide issues as to withdrawal of counsel, the Court should deny the OAG's motion.

## RELEVANT FACTS & PROCEDURAL HISTORY

### A.    The Litigation Incident: The Assault on Mr. Bauer

On February 12, 2020, Plaintiff Adam Bauer was incarcerated at Marcy Correctional Facility in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"). *See* Compl. ¶ 2, ECF No. 1. Plaintiff was less than a year away from the end of a short sentence he was serving for a non-violent drug-related offense. *Id*. On that day, while Mr. Bauer was in the bathroom intending to smoke a cigarette, Defendant Antonio Iodice entered the bathroom and directed Mr. Bauer to get up against the wall to be pat down. *Id*. Upon Mr. Bauer complying with that direction, and without any justification, warning, or provocation, Iodice assaulted Mr. Bauer, punching him in the head, throwing him to the ground, and kicking him repeatedly in the side. *Id*.

Defendants Nicolas Anzalone, Sergeant Alfred Zeina, and Sergeant Thomas McNaney entered the bathroom while Iodice was assaulting Mr. Bauer and either joined him in doing so or failed to intervene. *Id*. ¶ 3. Defendants beat Mr. Bauer so badly that he defecated in his pants due to extreme pain, while also bleeding from a wound in his head caused by one of the defendants smashing a clipboard over his head, leaving a V-shaped laceration caused by the metal clasp on the clip board. *Id*. ¶¶ 38-43.

After beating him, Defendants Anzalone and Zeina dragged Mr. Bauer out of the bathroom, threw him in a van to transport him to the infirmary, and forced him to lie on his stomach on the floor of the van while Anzalone, who sat in the back of the van with Mr. Bauer, kicked him during the ride to the infirmary. *Id*. ¶¶ 45-51.

After being looked at in the infirmary, Mr. Bauer was transferred to the St. Luke's emergency room, where medical staff documented two lacerations that required over twenty stitches. *Id*. ¶¶ 61-68. St. Luke's staff noted that Mr. Bauer was "crying profusely" and documented him reporting to an emergency room nurse that officers had "beat the crap out of" him. *Id*. ¶¶ 66-67.

**B.    Discovery Closes, the Case is Trial Ready, and the Parties Engage in Settlement Discussions**

Discovery in this case is complete, and Defendants did not file any dispositive motions by the May 20, 2024 deadline. *See* Order, ECF No. 44 at f. On November 12, 2024, the Court deemed the case trial ready. *See* Text Order, ECF No. 52.

On that date, the Court further ordered that the parties "engage in meaningful settlement negotiations" and required status reports as to settlement discussions to be filed on December 10, 2024. *Id*. The parties filed separate status reports, informing the Court that by that date, Plaintiff's settlement demand had been pending with Defendants for over eight months, having been sent on June 26, 2024. *See* Status Report at 1, ECF No. 55. Counsel for Defendants represented that at least since August 2024, counsel had been working to obtain settlement authority in this matter. *Id.* at 1. Counsel had also previously indicated to the undersigned, on September 26, 2024, that counsel would have settlement authority for this case "hopefully within a few weeks." Status Report at 1, ECF No. 53. On October 30, 2024, Plaintiff followed up again with Defendants' counsel, at which time counsel for Defendants said that counsel "will have settlement authority soon." *Id*. at 2.

### C.    Defendant Anzalone is Allegedly Involved in the Death of Robert Brooks

As reported in several media outlets, Robert Brooks died on December 10, 2024, allegedly as a result of a fatal beating the day prior by several corrections officers at Marcy, as captured on body-worn camera footage.[1]

In a lawsuit filed in this district, Defendant Anzalone is alleged to have participated in the beating that caused Mr. Brooks' death. *See* Complaint with Jury Demand ¶¶ 33, 42, 58, 57 & 61, *Brooks v. Farina, et al.*, No. 9:25-CV-68, ECF No. 1 (N.D.N.Y. Jan. 15, 2025).

### D.    The AG's Office of Special Investigation Investigates and then Recuses

On December 16, 2024, the New York Attorney General's Office of Special Investigations opened an investigation into the death of Mr. Brooks. *See* Mem. of Law at 9, ECF No. 61-3.

The OAG announced OSI's recusal on January 2, 2025. *Id*. The OAG stated that OSI was recusing itself "from further investigation into the incident due to its current representation of some of the Marcy Employees in other cases," *id.* at 4, including this case. OSI appears to have investigated the death of Mr. Brooks for approximately two weeks.

### E.    Motions to Withdraw

On January 10, 2025, the OAG filed their first Motion to Withdraw, after which Plaintiff requested a court conference pursuant to the Local Rules, both of which were denied. *See* Motion to Withdraw, ECF No. 56; Letter Motion, ECF No. 57; Order, ECF No. 58.

On January 14, 2025, District Judge Suddaby issued a Text Notice noting:

Defense counsel is respectfully advised that, in any renewed motion, counsel should explain how an actual conflict under Rule 1.7(a)(1) exists despite the fact that (1) neither the OSI nor the OAG (but rather media outlets) were the ones who identified

---

[1] *See, e.g.*, Zoe Sottile, *Video of inmate's fatal beating shows him handcuffed as correctional officers punch and kick him*, CNN (Dec. 28, 2024) https://www.cnn.com/2024/12/27/us/marcy-correctional-facility-death-robert-brooks/index.html

Defendant Anzalone as one of the employees involved in the released video footage, (2) the OAG (and presumably the OSI) withdrew from the investigation into the death of Mr. Brooks on 01/02/2025, (3) Onondaga County District Attorney William J. Fitzpatrick is becoming, or has become, the special prosecutor in this matter, and (4) on 01/02/2025, the Governor expressed her 'confiden[ce] in the firewalls set up between the [OAG] and the [OSI].' Furthermore, counsel should explain how any appearance of impropriety cannot be sufficiently addressed through traditional methods (such as motions in limine, voir dire, and/or limiting instructions).

Text Notice, Jan 14. 2025 (No. 9:22-cv-1007).

On January 29, 2025, the OAG filed the instant renewed motion to withdraw as counsel for all four Defendants in this case. The motion followed the parties' meet and confer, during and after which the OAG declined Plaintiff's request to discuss settlement of this matter or to stay the deadline to file a renewed motion to withdraw until after a settlement conference, citing their purported conflict, though they were reviewing Plaintiff's pending claim in the New York State Court of Claims (*Bauer v. State of New York*, Claim No. 137002 (Ct. Cl. 2021)). *See generally* Status Report, ECF No. 59.

## ARGUMENT

"District courts have wide discretion in deciding whether to grant a motion for an attorney's withdrawal[.]" *Koon Chun King Kee Soy & Sauce Factory, Ltd. v. Kun Fung USA Trading Co., Inc.*, No. 07-CV-2568, 2009 WL 605786, at *2 (E.D.N.Y. Mar. 9, 2009) (citing *Whiting v. Lacara*, 187 F.3d 317, 320 (2d Cir. 1999)). "District courts are due considerable deference in decisions not to grant a motion for an attorney's withdrawal." *Whiting*, 187 F.3d at 320.

"In exercising its discretion, a court should analyze both 'the reasons for the withdrawal and the impact of the withdrawal on the timing of the proceeding[,]' and should ensure 'that the prosecution of the suit is not disrupted by the withdrawal of counsel.'" *John v. All Star Limousine Serv., Ltd.*, No. 17-CV-6327, 2019 WL 13205033, at *1 (E.D.N.Y. Dec. 9,

2019) (quoting *Hexemer v. Gen. Elec. Co.*, No. 12-CV-1808, 2014 WL 5465813, at *2

(N.D.N.Y. Oct. 28, 2014)).

Local Rule 11.1(b) requires that the OAG establish good cause for withdrawal; the Court

may look to whether a conflict of interest exists under the New York Rules of Professional

Conduct ("NYRPC"),[2] precluding counsel's continued representation, in determining whether

good cause exists. *See Whiting*, 187 F.3d at 321.

## I.   NO CONFLICT EXISTS, AND THUS NO GOOD CAUSE TO WITHDRAW EXISTS, BECAUSE OSI AND OAG LITIGATION BUREAU ARE NOT A "FIRM"

Here, the central question is whether OAG Litigation Bureau has a conflict precluding

their continued representation of Defendant Anzalone (and/or all Defendants) due to the OSI's

two-week investigation into Mr. Brooks' death. As set forth below, any conflict an OSI lawyer

may have is not imputable to the OAG Litigation Bureau. Thus, no good cause exists for the

OAG Litigation Bureau to withdraw.

### A.   The OAG Litigation Bureau and OSI Are Not a "Firm" Under the NYRPC

The OAG Litigation Bureau continuing to represent Defendant Anzalone (or any other

Defendant) presents no conflict under the NYRPC. There is thus no good cause for the OAG

Litigation Bureau's withdrawal as counsel. Any conflict an OSI attorney would have regarding

Anzalone cannot be imputed to the OAG Litigation Bureau because the OAG Litigation Bureau

and OSI are not a "firm" under the NYRPC.

OAG's argument that OAG Litigation Bureau and OSI constitute a "firm" for conflict

imputation purposes is unsupported. OAG's analysis on that point is as follows. First, the OAG

argues that "lawyer[s] associated with a firm may not knowingly represent a client when another

---

[2] All citations to NYRPC and its comments are available online at https://nysba.org/app/uploads/2022/07/Rules-of-Professional-Conduct-as-amended-6.10.2022-20220701.pdf.

lawyer in the same firm would be conflicted from doing so under" the NYRPC and that "[t]he determination of whether one or more entities constitute a firm is a fact-intensive one," such that "[w]hen the public perceives two lawyers working for the same organization, they should be regarded as a firm for purposes of the Rules." Mem. of Law at 10, ECF No. 61-3. But the OAG does not argue that, in fact, "the public perceives" the OAG Litigation Bureau and OSI as "working for the same organization," *id*., and thus must be considered a firm pursuant to a "fact-intensive" determination, *id*. Instead, the OAG simply asserts in conclusory fashion that "[a]s a firm, the conflict is imputed between OSI and the Litigation Bureau," without citation. *Id*. That is the sum total of OAG's argument on the central question of whether OAG Litigation Bureau and OSI are a "firm," such that the latter's conflict would be imputed to the former.

In reality, the necessary "fact-intensive" determination reveals that lawyers employed by OSI and the OAG Litigation Bureau are not a "firm" under the NYRPC.

First, as to whether "the public perceives two lawyers working for the same organization," *id.* at 10, the very purpose of New York creating OSI in 2021 was to "promote public confidence **by removing a potential conflict of interest** in an investigation where a New Yorker has died following an encounter with a law enforcement officer." NY Bill Jacket, 2020 S.B. 2574, Ch. 95 (emphasis added); *see also* NY Bill Jacket, 2020 S.B. 8496, Ch. 96 ("Assembly member Perry also sponsored legislation to create an Office of Special Investigation within the Office of the New York State Attorney General, **which will independently investigate**, and if warranted, prosecute incidents involving the death of a person caused by an act or omission of a police or peace officer") (emphasis added).

The legislative history of the statute creating OSI thus undermines the notion that the public in fact perceives OSI lawyers and OAG Litigation Bureau attorneys to be working for the

same organization, thus constituting a "firm." To the contrary, the State legislature created OSI specifically so that the public would *not* perceive OSI lawyers as such, but rather as an office that "independently investigate" incidents, NY Bill Jacket, 2020 S.B. 8496, Ch. 96, to thereby "promote public confidence by removing a potential conflict of interest," NY Bill Jacket, 2020 S.B. 2574, Ch. 95. This first fact mitigates against a finding that the two entities are a "firm" under the NYRPC.

Next, the lack of information sharing between OAG Litigation Bureau and OSI is further evidence that the two entities do not constitute a "firm." In its argument, the OAG omits a portion of Comment [2] to NYRPC 1.0 as to the definition of a "firm," which states that "[t]he terms of any formal agreement between associated lawyers are relevant in determining whether they are a firm, **as is the fact that they have mutual access to information concerning the clients they serve**." NYRPC 1.0, Comment [2] (emphasis added). As the OAG concedes, "[t]he Bureau and OSI are two distinct components of OAG, and the Bureau and OSI do not share any non-public information about their respective cases or investigations." Decl. of William A. Scott ¶ 5, ECF No. 61-1. As the Court also noted in its text order, in a statement recusing OSI from the investigation into Mr. Brooks' death, the New York Attorney General expressed that she was "confident in the firewalls set up between the Division of State Counsel and the Office of Special Investigation."[3] Therefore, per the comment to NYRPC 1.0 cited by the OAG, the fact that the OAG and OSI *do not* have "mutual access to information" concerning Defendants, NYRPC 1.0, Comment [2], also weighs in favor of the determination that the two entities are not a "firm."

---

[3] VIDEO: Attorney General James Updates New Yorkers on Investigation into the Death of Robert Brooks at Marcy Correctional Facility, https://ag.ny.gov/press-release/2025/video-attorney-general-james-updates-new-yorkers-investigation-death-robert.

Importantly, the OAG's argument as to screening again assumes the truth of the conclusory assertion that OAG Litigation Bureau and OSI constitute a firm. *If* the two entities constituted a firm, firewalls and screens may not be sufficient to prevent imputation of a conflict. *See* Mem. of Law at 11, ECF No. 61-3 (citing N.Y. Eth. Op. 1186 ¶ 26 (2020)). But because they do not constitute a "firm" under the rules—in part *because* there is no information sharing between the two entities—there is no imputation of OSI's conflict to the OAG Litigation Bureau, and thus nothing for screening to "cure." For the same reasons, whether or not the OSI's conflict is "waivable" by Defendants here, Mem. of Law at 11, ECF No. 61-3, is similarly irrelevant, as the OSI's conflict is not imputable to the OAG Litigation Bureau given that they are not one "firm."

Indeed, as the OAG's own citation demonstrates, "certain elements of screening may be used to demonstrate that divisions or projects of a legal services organization constitute different law firms for purposed of the conflict's rules." N.Y. Eth. Op. 1186 ¶ 26 (2020). For example, the Ethics Opinion notes that "to qualify as a separate 'firm' under the Rules, a unit of a legal services organization must ensure the confidentiality of client confidences." *Id*. ¶ 24. The OAG emphasizes repeatedly that the two divisions "ensure the confidentiality of client confidences," *id*.—and the OAG affirms that "the Bureau and OSI do not share any non-public information about their respective cases or investigations," Decl. of William A. Scott ¶ 5, ECF No. 61-1, which is bolstered by the fact that the Attorney General is "confident in the firewalls set up between the Division of State Counsel and the Office of Special Investigation."[4] These representations further confirm that OSI and the OAG Litigation Bureau are not one "firm."

---

[4] Press Release, Letitia James, New York Attorney General, VIDEO: Attorney General James Updates New Yorkers on Investigation into the Death of Robert Brooks at Marcy Correctional Facility (Jan. 2, 2025), https://ag.ny.gov/press-release/2025/video-attorney-general-james-updates-new-yorkers-investigation-death-robert.

In the context of attorney disqualification, the Second Circuit Court of Appeals has similarly held that "[w]hether an attorney is associated with a firm for purposes of conflict imputation depends in part on the existence and extent of screening between the attorney and the firm." *Hempstead Video, Inc. v. Inc. Vill. of Valley Stream*, 409 F.3d 127, 134 (2d Cir. 2005). There, the Second Circuit considered whether an "of Counsel" to a law firm was associated with that firm such that the former's conflict could be imputed to the latter. *Id*. at 136. In finding the conflict not imputable, the court emphasized that "the [law firm] had no access to the confidences of [of Counsel's] private clients. . . . [law firm] did not have access to the files. . . . [of Counsel] never discussed the details of either the present case or the [other relevant case] with anyone at [law firm]." *Id*. Here too, OAG Litigation Bureau has no access to OSI's confidential information (or vice versa), and it is undisputed that OSI and OAG Litigation Bureau have "never discussed the details of either the present case," *id*., or the Brooks case.

Other factors discussed in Ethics Opinion cited by the OAG similarly support the determination that the two entities are not a "firm." For example, the Ethics Opinion cites a prior case where the Committee on Professional Ethics "considered whether a 'conflict panel' of lawyers established to provide legal assistance to clients who could not be served by the local Legal Aid office because of a conflict of interest should be considered part of the same firm as the Legal Aid office." N.Y. Eth. Op. 1186 ¶ 19 (2020). The Committee "concluded that, because neither the Legal Aid office nor its lawyers would exercise any supervision or control over the legal services provided by the conflict panel, they were not part of the same firm." *Id*.

So too here. As the OAG affirms, the OAG Litigation Bureau and OSI "are two distinct components" and "do not share any non-public information about their respective cases or investigations." Decl. of William A. Scott ¶ 5, ECF No. 61-1. The logical conclusion that flows

is that neither the OSI "nor its lawyers would exercise any supervision or control over the legal services provided by" the OAG Litigation Bureau to Defendants in this case, and thus "they [are] not part of the same firm." N.Y. Eth. Op. 1186 ¶ 19 (2020).

**B.    The OAG's Request to Withdraw Is Inconsistent with Current Practices**

OSI has investigated hundreds of deaths in custody since its creation in 2021. OSI's 2024 Annual Report states that it investigated 182 deaths in jails and prisons (136 of which were in DOCCS-operated facilities) in the period covered by that report alone.[5] If one were to accept the OAG's logic in its motion, it would follow that the OAG Litigation Bureau could be forced to seek to withdraw as counsel (or to recuse itself from representation in the first place) for any case brought as a result of those deaths and any others that OSI has investigated since its creation in 2021. Such a result would paralyze the OAG Litigation Bureau from defending state employees in hundreds of cases, which was not the intention of the 2021 statute that created OSI.

In practice, OAG Litigation Bureau does represent defendants in litigation even when OSI has also investigated the death at issue. To take one example, OSI's public investigation data reveals that in 2023, OSI investigated the death in custody of Matthew Spigner. *See* Ex. 1 to Affirmation of Eric Abrams at 8 (PDF version of Excel spreadsheet entitled "osi-data-table_1", available at https://ag.ny.gov/sites/default/files/2023-09/osi-2023-data-table_1.xlsx). After Mr. Spigner's death, Colomba Spigner, individually and as Executor of the Estate of Matthew Spigner, brought suit in the Eastern District of New York,[6] naming as defendants DOCCS itself, as well as several DOCCS superintendents, nurses, doctors, and other employees. *See generally*

---

[5] Office of the New York State Attorney General Letitia James, Office of Special Investigation, Office of Special Investigation Fourth Annual Report at 44-45 (Oct. 1, 2024), https://ag.ny.gov/sites/default/files/reports/20241001-annual-report.pdf
[6] Ms. Spigner originally brought her claim in the Eastern District of New York, which was thereafter transferred to the Northern District. *See* Text Order Transferring Case, *Spigner v. New York State Department of Corrections and Community Supervision et al.*, No. 23-cv-08741 (E.D.N.Y. Apr. 15, 2024).

Complaint, *Spigner v. New York State Department of Corrections and Community Supervision, et al.*, No. 24-CV-00520, ECF No. 1 (N.D.N.Y. Nov. 28, 2023). Despite the fact that OSI investigated Mr. Spigner's death just as it did Mr. Brooks' death, the OAG to this day continues to represent DOCCS and the individual DOCCS employee defendants in Ms. Spigner's ongoing case. *See* ECF Nos. 18, 21, 27, 44, 48-49, *Spigner*, No. 24-CV-00520 (various notices of appearance for DOCCS and DOCCS employee defendants from various Assistant Attorneys General from the OAG).

The OAG Litigation Bureau has not sought to withdraw from that case due to any purported conflict stemming from OSI's investigation into Mr. Spigner's death in 2023. *See* Ex. 1 at 8. Nor should it. OAG Litigation Bureau may represent defendants in lawsuits involving deaths where OSI has investigated, because the two entities are not a single firm, and no conflict is created or exists. This arrangement also ensures that the OAG Litigation Bureau may continue to function as intended, to provide representation for "the state, its officers, and its agencies in state and federal courts in actions involving almost every substantive area of the law."[7]

## II.   TRADITIONAL METHODS OF MOTIONS *IN LIMINE*, VOIR DIRE, AND/OR LIMITING INSTRUCTIONS ARE SUFFICIENT

As described *supra*, the lack of any imputed conflict renders unnecessary the "curing" of any "conflict" by traditional methods of motions *in limine*, voir dire, and limiting instructions.

Even in the absence of an actual conflict, OAG argues that these traditional methods would not be sufficient to "remedy the appearance of impropriety." Mem. of Law at 13, ECF No. 61-3. However, as has long been the law in this circuit in the context of disqualification motions, "[m]ere appearance of impropriety will not alone serve as a sufficient basis." *Revise Clothing,*

---

[7] State Counsel Division, New York State Attorney General (Jan. 1, 2024), https://ag.ny.gov/about/about-office/state-counsel-division.

*Inc. v. Joe's Jeans Subsidiary, Inc.*, 687 F. Supp. 2d 381, 388 (S.D.N.Y. 2010) (quoting *United States Football League v. National Football League*, 605 F. Supp. 1448, 1452 (S.D.N.Y. 1985)). Rather, there must also be facts that "present a real risk that the trial will be tainted." *Id*. That is not the case here, as any ostensible prejudice to Defendants is sufficiently addressed via the traditional methods suggested by the Court in its Text Order.

As to whether the trial will be tainted, the OAG focuses on the media coverage of Mr. Brooks' death. The OAG also notes that Plaintiff's counsel was quoted in the media about the incident. *See* Mem. of Law at 13-14, ECF No. 61-3. Their argument boils down to the notion that Plaintiff's counsel made statements to news outlets, including "several in Central New York where this Court sits," and that counsel's statements that the OAG's defense of corrections officers accused of assault was "at the New York State taxpayers' expense" somehow "rendered any motions *in limine*, voir dire, and limiting instructions virtually useless," because said taxpayers are "the same individuals that will comprise the jury pool in this matter," rendering a fair trial impossible. *Id*. at 14. The OAG also points to "[t]he public updates on the investigation and ultimate recusal" by OSI as potentially being "interpreted as OAG taking a position adverse to Defendant Anzalone." Mem. of Law at 9-10, ECF No. 61-3. Setting aside that this argument lacks merit due to the public not perceiving OAG Litigation Bureau and OSI as being the same organization, *see* Section I, *supra*, the OAG cites no authority for the notion that such public opinion, negative news coverage, or other media reports are impossible to rectify via traditional methods of motions *in limine*, voir dire, and limiting instructions.

Trial judges have long used these traditional methods to mitigate any biases a juror may have due to public news or media reports. As far back as 1976, the Supreme Court noted that "the trial judge should employ the Voir dire to probe fully into the effect of publicity. The judge

should broadly explore such matters as the extent to which prospective jurors had read particular news accounts." *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 602 (1976) (Brennan, J. concurring); *see also Palin v. New York Times Co.*, 113 F.4th 245, 270 (2d Cir. 2024) ("When a potential juror voiced doubts that he could be impartial given what he had read about the case in the news, the district court excused him.").

The risk of a tainted trial, according to the OAG, stems solely from media reports and potential biases jurors may have as a result. But according to the case law, voir dire alone is sufficient to mitigate that risk. The Court was thus correct in suggesting that a combination of motions *in limine*, voir dire, and/or limiting instructions can all sufficiently address the OAG's concerns as to prejudice to Defendants.

## III.    PLAINTIFF WOULD BE SIGNIFICANTLY PREJUDICED BY OAG'S WITHDRAWAL

The Court should also exercise its broad discretion to deny the OAG's motion because this case is not just "on the verge of trial readiness," *Malarkey v. Texaco, Inc.*, No. 81-CV-5224, 1989 WL 88709, at *2 (S.D.N.Y. July 31, 1989) (denying motion to withdraw), but is in fact trial ready, *see* Text Order, ECF No. 52. This is the opposite of a case where discovery "is not complete and the case is not presently scheduled for trial" such that "granting the instant motion will not likely cause undue delay." *Brown v. Nat'l Survival Games, Inc.*, No. 91-CV-221, 1994 WL 660533, at *3 (N.D.N.Y. Nov. 18, 1994).

Rather, "a change in counsel would do no more than extend the already protracted history of the litigation." *Malarkey*, 1989 WL 88709, at *2. This case has been pending for nearly 3.5 years, and settlement discussions have been underway since June 2024. Status Report at 1, ECF No. 55. As of October 2024, counsel for Defendants represented that they "will have settlement authority soon." Status Report at 2, ECF No. 53. Substitution of counsel will necessarily set

settlement negotiations back to zero and will concomitantly delay the setting of a trial date any time in the near future. Plaintiff will be significantly prejudiced, and "the Court's ability to manage its docket would certainly be impeded by a change in counsel at this late stage of the litigation." *Malarkey*, 1989 WL 88709, at *2.

The OAG's arguments to the contrary again hinge on the argument that a conflict has been imputed by the OAG Litigation Bureau. Given that OAG Litigation Bureau and OSI are not one "firm," and the conflict is not imputable, *see* Section I, *supra*, these arguments are irrelevant.

## IV.    IN THE ALTERNATIVE, THE OAG SHOULD BE PRECLUDED FROM WITHDRAWING AS COUNSEL FOR DEFENDANTS IODICE, MCNANEY, AND ZEINA

Even if the Court is inclined to allow OAG to withdraw as counsel for Defendant Anzalone, the Court should deny the request to withdraw from representing Defendants Iodice, McAnany and Zeina. Given the lack of any imputed conflict to the OAG Litigation Bureau, *see* Section I, *supra*, the vast majority of the OAG's arguments on whether they must withdraw from defending Defendants Iodice, McNaney, and Zeina are unavailing, similarly hinging on the incorrect premise that "an actual conflict of interest has arisen." Mem. of Law at 11, ECF No. 61-3 (quoting *Sidor v. Zuhoski*, 261 A.D.2d 529, 530 (2d Dep't 1999)); *see* Section I, *supra*.

Otherwise, the OAG has failed to demonstrate that "confidential information" having been "shared between and among counsel and the jointly represented clients" raises "ethical concerns" about using that information going forward, ostensibly precluding their continued representation of Defendants Iodice, McAnany and Zeina. Mem of Law at 11, ECF No. 61-3. OAG does not specify what, if any, those purported "ethical concerns" are, and only cites a couple of comments to NYRPC Rule 1.7 in support. *Id*. But as the comments to Rule 1.7 (as cited by OAG) make clear, "[w]ith regard to the attorney-client privilege, the prevailing rule is that, as between commonly represented clients, the privilege does not attach." NYRPC Rule 1.7,

Comment [30]. Given the lack of privilege, it is thus not clear what vague "ethical concerns" the OAG is conceptualizing regarding continued representation of Defendants Iodice, McNaney, and Zeina should OAG be permitted to withdraw as counsel for Defendant Anzalone only.

Finally, as to a purported "irreparable breakdown in the attorney-client relationship," Mem of Law at 12, ECF No. 61-3, the OAG has not submitted with their motion the requisite "'strong evidence of a strained attorney-client relationship[.]'" *id.* at 13 (quoting *Karimian v. Time Equities, Inc.*, No. 10-CV-3773, 2011 WL 1900092, at *2 (S.D.N.Y. May 11, 2011). For withdrawal to be warranted on this ground, the OAG must "establish that the relationship between the parties has deteriorated beyond repair." *McGuire v. Wilson*, 735 F. Supp. 83, 85 (S.D.N.Y. 1990). In *McGuire*, evidence of such deterioration included affidavits from both counsel and the client, which included allegations by the client of "numerous mishandlings of his legal representation," and indicated that the client's "dissatisfaction [was] marked by animosity and vituperative letters documenting the hostility that exists between him and counsel," that the client "refused steadfastly to make any payments, provide any assurances that he would make any future payments, or acknowledge such payments were due," that he apparently had "no intention of honoring the retainer agreement requiring [client] to pay for services rendered," and that the client had even gone so far as to have "retained new counsel." *Id*.

No such evidence exists in this case. No Defendant has submitted an affidavit indicating that they believe the attorney-client relationship has deteriorated beyond repair. The extent of the OAG's evidence on this point is a single, vague sentence in one of their attorney affirmations: "During the course of these conversations, it became clear to OAG that due to the OSI investigation, certain Defendants distrusted the representation of OAG Litigation Bureau causing the attorney client relationship to deteriorate to the point where OAG Litigation Bureau should

no longer represent Defendants." Decl. of Olivia R. Cox ¶ 5, ECF No. 61-2. The OAG has submitted no evidence as to: (1) which Defendants in particular "distrusted" the OAG's representation; (2) whether any of the Defendants themselves in fact consider the attorney-client relationship "strained" and "beyond repair," versus OAG Litigation Bureau surmising as much; (3) any allegations by Defendants that the OAG "mishandl[ed] [their] legal representation"; or (4) any sense of "dissatisfaction," "animosity," or "hostility that exists between [Defendants] and counsel." *McGuire*, 735 F. Supp. at 85. The OAG's single line in an attorney affirmation fails to establish the "strong evidence" of a deteriorated attorney-relationship beyond repair, as necessary for withdrawal. *Karimian*, 2011 WL 1900092, at *2.

## CONCLUSION

For the foregoing reasons, the Court should deny OAG's motion to withdraw or, in the alternative, permit them to withdraw only as counsel for Defendant Anzalone.

Dated:  February 19, 2025
New York, New York

EMERY CELLI BRINCKERHOFF
ABADY WARD & MAAZEL LLP

/s/
Katherine Rosenfeld
Eric Abrams

600 Fifth Avenue, 10th Floor
New York, New York 10020
(212) 763-5000
